IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2017

**STATE OF TENNESSEE v. JENNIFER HODGES**

**Appeal from the Circuit Court for Montgomery County**
**No. 2015-CR-0010  Jill Bartee Ayers, Judge**

_____

**No. M2016-01057-CCA-R3-CD**

_____

Defendant, Jennifer Hodges, pleaded nolo contendere to six counts of statutory rape, a Class D felony, and one count of solicitation of a minor, a Class E felony.  Defendant was sentenced to four years for each count of aggravated statutory rape and two years for solicitation.  All sentences were ordered to run concurrently for an effective four-year sentence.  The effective sentence was suspended, and she was placed on probation for four years.  On appeal, Defendant contends that the trial court erred by not granting her request for judicial diversion and that the trial court erred by sentencing her to the maximum sentences for her convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Roger Eric Nell, District Public Defender; and Charles Bloodworth, Sr., Assistant Public Defender, Clarksville, Tennessee, for the appellant, Jennifer Hodges.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Background*

The following facts were set forth by the State at the plea submission hearing:

Your Honor, in July of 2014 the mother of DC, who was 16 at the time, found text messages on his phone in which the Defendant had detailed

sexual encounters between the two. During a forensic interview DC described four specific sexual encounters with the Defendant in June of 2014 involving multiple penetrations, including both [penile] and [sic] vaginal penetration as well as fellatio.

DC also provided information that the Defendant had told him there were only three rules: That he couldn't tell anyone, there could be no anal and that he couldn't fall for her. In addition to these sex acts the Defendant did solicit DC for sexual intercourse.

During an interview with law-enforcement the Defendant denied any sexual contact, but did describe herself as a MILF and that her son's friends thought that she was hot.

Testimony at trial would also come from Michael Lagrant (phonetic spelling), to whom the Defendant admitted having sex with DC and that he was just another notch on her belt.

After the facts were read, defense counsel made the following statement:

Obviously, we contest some of those facts. I've explained to [Defendant] that her plea of no contest, nolo contendere, is her admission that there is evidence out there that, if believed by a jury, could justify the returning of a verdict of guilty against her. She does not concede that all the facts are true and happened. She had had a preview of what DC will say, because this was actually subjected to a preliminary hearing at the general sessions level, and she had heard him testify on the witness stand. The Court will probably hear some of that at the sentencing hearing.

. . . this Defendant says I do not attempt, that what they say is true; I'm willing to spare the State time, effort and expense of a trial; the Court may treat it as if it is true because I am not mounting a defense to it because I have been assured in this plea agreement that I will not go to jail.

At the sentencing hearing, the presentence report was admitted into evidence as well as a copy of Defendant's psychosexual evaluation and the victim impact statements. The presentence report notes no prior criminal history for Defendant other than one traffic offense. Defendant told the trial court that she planned to move home to Alabama with her children. She also told the court: "And I can guarantee I will never be in trouble again or have anything to do with anything that might set me in this situation again. . ."

Defendant's statement, included as part of the presentence report, mainly focuses on how the current offenses have affected her and her family.  It reads as follows:

> I could give my side of things but I really don't think that would help me at this point.  What I would like to say I have spent my whole life being judged, pointed at and disliked for many reasons.  My whole life I have been a fighter and I have survived some pretty horrific things but I keep my head up and keep going.  One thing I would like to put out there is I'm sorry that all this craziness has taken up the Judge[']s and court[']s time.  I really need you to know in my entire life I have tried to do what[']s right.  I'm not perfect or better than anyone else and I don't pretend to be.  One thing I am very confident in is in no way after years of no criminal history did I wake up one day and choose to be a pedophile.
>
> The events that have taken place over the past 2 years have crushed my family.  It almost caused a divorce twice.  My kids all 7 were removed from my care [and] put in separate foster homes for months[.]  I am still trying to correct the damage done by that.  My anxiety had been so bad they have had to put me on larger doses.  My health has declined.  My children were harassed to the point that I had to move them to 2 different schools before they were taken from me.  My kids are my stren[g]th[.]  I live for them.  They are all I have in this world.  I have de[a]lt with abuse physically and verbally my entire life but my children don't deserve it.  I am embarrass[s]ed by everything that has taken place in the last 2 years.  My family is just now recovering from financial problems due to the outrage[ou]s bond amounts.  My bond company can tell you I have followed every rule set.  I have tried to prove to everyone I am a good person. I really am!  I guess what I'm wanting to get across is, I owe my children to make things right so I'm asking even begging for mercy.  I can stand in court and hear all the bad things and lies they are going to say[.]  I have taken worse from my own mother but my children can't.  I am not a sex offender nor will I ever be[.]  [I]f I could have one wish it would be taken off the SOR [Sex Offender Registry.]  I would take probation for the rest of my life, but if that is impossible please allow me to be removed from that list after a short time.  I was never in trouble before and I don't plan on ever being in a situation like this again.  If it wasn't for my kids I would be a nobody but because of them and to them I am somebody and I would like to walk my 5 [year-old] to her first day of school and be room mom like I was [to] my much older children.  I want to be involved [with] my kids schooling and [ ] sports.  I want to be given the opportunity to be the mom I have always been until all this took place.  My 2 older children (16 [and] 18) who I have always been

close to are no longer close to me or even live with me due to the constant bull[y]ing and fear that they are being put through due to the family of [the victim] and the small town. Due to the separation from my kids my depression has escalated. I'm sure the situation has [a]ffected so many people and I am truly from the bottom of my heart sorry. I promise to never come to T[N] or K[Y] again I promise to never get into trouble I promise to neve[r] put myself in a situation that could cause people to get the wrong idea. Please have mercy not for me but for my children they need me in every aspect of their lives and the SOR and probation limits that and I'm trying my hardest to keep this from hurting and effecting my babies long term. I would rather die than have them be punished because I went through all of this.

Defendant's psychosexual evaluation, which was completed prior to her statement in the presentence report, indicates that she is "not a reliable historian due to inability to recall significant pieces of her past history, minimization of events with significant omission of number of contact[s] with the alleged victim." Defendant also denied any depression, psychosis, or anxiety at the time of the report. The report also indicates that Defendant's children were recently removed temporarily by the Department of Human Services due to a domestic violence incident between Defendant and her husband that involved the children. Defendant reported verbal and physical abuse by her mother when Defendant was a child and domestic abuse by Defendant's husband. In her version of the events, Defendant essentially stated that the victim pursued her, and she eventually gave in to him. The psychosexual evaluation contains the following summary:

> From the Review of Records and particularly what the alleged victim reported to the interviewer at the Child Advocacy Center and the initial officer's report after talking to the alleged victim's mother; [sic] there is definite concern for the actions reported that are consistent with sex offending behavior of Grooming: spending money on potential victim, buying presents, going to movie, and setting up rules to not tell and progression of sexual contact. It is also concerning there is indication in the reports that [Defendant] involved her teenage son for access to her alleged victim.

> [Defendant] is a **low risk for recidivism with children under the age of 13 however the above reported Grooming Behavior indicates a significantly higher risk to those ages 13 to 18 years of age**. Based on the reported grooming behavior with [the] current alleged victim, potential use of her own son to assist in initial contact with alleged victim, reported setting of rules for engagement and the reported instructions that the activities be secret are most concerning as they are

consistent with predatory behavior rather than an innocent occurrence of misjudgment as [Defendant] indicated.

(emphasis in original).

In his victim impact statement, the victim indicated that he had received death threats, lost certain friendships and relationships, struggled with depression, and he had just begun to regain his mother's trust. He also described the situation with Defendant as a "nightmare." The victim stated, "there is [n]othing that can possibly fix how I feel." The victim's mother also submitted a victim impact statement in which she stated that the entire family had been a victim of the incident. She noted that the victim's virginity, his innocence, and his friends had been taken from him by Defendant's actions. The victim's mother further said:

> This woman mother of soon to be 7 lives has stolen the childhood from numerous kids, and has been [portrayed] as a victim. This has been on the news, other parents have seen or heard, and don't want their children around my son, because they just want their children safe. I understand this. That is all I ever wanted for my children. That is why they were never [allowed] to go anywhere unless a parent was home, and I had to meet the parents! How do you protect your children if you can't even trust another mom??

*Analysis*

Defendant argues on appeal that the trial court should have granted judicial diversion or, in the alternative, sentenced her to less than the maximum sentence. The State responds that the court properly denied judicial diversion and correctly sentenced Defendant to four years suspended, to be served on probation.

In *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012), the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id.* at 708. This standard of review extends to alternative sentences as well as decisions involving judicial diversion. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) ("[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence."); *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)("the abuse of discretion standard accompanied by a presumption of reasonableness applies to all sentencing decisions, including the grant or denial of judicial diversion, when the trial court properly supports its decision on

the record in accordance with the purposes and principles of sentencing"). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court imposes a sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion. After a qualified defendant is either found guilty or pleads guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A). A qualified defendant is defined in relevant part as a defendant who:

> *(a)* [i]s found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> . . .
>
> (*c*) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119, driving under the influence of an intoxicant as prohibited by § 55-10-401, vehicular assault under § 39-13-106 prior to service of the minimum sentence required by § 39-13-106, or a Class A or B felony;
>
> (*d*) [h]as not previously been convicted of a felony or a Class A misdemeanor for which a sentence of confinement is served; and
>
> (*e*) [h]as not previously been granted judicial diversion under this chapter or pretrial diversion.
>
> (ii) As used in subdivision (a)(1)(B)(i)(c), "sexual offense" means conduct that constitutes:
>
> (*a*) Aggravated prostitution, as described in § 39-13-516;
>
> (*b*) Aggravated rape, as described in § 39-13-502;

(*c*) Aggravated sexual battery, as described in § 39-13-504;

(*d*) Aggravated sexual exploitation of a minor, as described in § 39-17-1004;

(*e*) Attempt, as described in § 39-12-101, solicitation, as described in § 39-12-102 or conspiracy, as described in § 39-12-103, to commit any of the offenses enumerated in this subdivision (a)(1)(B)(ii);

(*f*) Especially aggravated sexual exploitation of a minor, as described in § 39-17-1005;

(*g*) Rape, as described in § 39-13-503;

(*h*) Rape of a child, as described in § 39-13-522;

(*i*) Sexual battery by an authority figure, as described in § 39-13-527;

(*j*) Sexual exploitation of a minor, as described in § 39-17-1003; or

(*k*) Statutory rape by an authority figure, as described in § 39-13-532.

T.C.A. § 40-35-313(a)(1)(B)(i)-(ii).

Eligibility for judicial diversion does not entitle the defendant to judicial diversion as a matter of right. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). Rather, the statute states that a trial court "may" grant judicial diversion in appropriate cases. *See* T.C.A. § 40-35-313(a)(1)(A). When making a determination regarding judicial diversion, the trial court must consider the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's mental and physical health, (6) the deterrent effect of the sentencing decision to both the defendant and other similarly situated defendants, and (7) whether judicial diversion will serve the interests of the public as well as the defendant. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing *Parker*, 932 S.W.2d at 958). The record must reflect that the trial court considered and weighed all these factors in arriving at its decision. *Electroplating, Inc.*, 990 S.W.2d at 229 (citing *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000)).

As noted above, our supreme court in *King* has concluded that the proper standard of review for judicial diversion decisions is that established in *Bise*. The *King* Court explained,

> [W]hen the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision. Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

> If, however the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard, which merely looks for "any substantial evidence" to support the trial court's decision, is not appropriate. . . . In those instances, appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration.

*King*, 432 S.W.3d at 328-29 (internal citations omitted) (footnote omitted).

The trial court in this case provided an extensive explanation why the defendant would not be granted judicial diversion:

> In looking at that issue I've had the opportunity to carefully review the victim impact statement of the victim and his mother, and then also reviewed the psychosexual evaluation, which was just handed up today. And in looking at judicial diversion the Court has to consider the Defendant's criminal record, social history, mental and physical condition, attitude and behavior since arrest, emotional stability, reputation and amenability to correction, the circumstances of the offense, the deterrent effect of the punishment on other criminal activity in the likelihood that diversion would serve the ends of justice and the best interest of both the public and the Defendant.

> Certainly, the victim impact statement is clear of the harm to the victim and his family, certainly, as a high school student and that environment that was created. In looking at the psychosexual evaluation the

- 8 -

concerning parts of that are the concerns for the actions consistent with the sex offending behavior of grooming.

There were six counts of the statutory rape, counts one through six. This was something that continued over a period of time and - - that involved the text messages, and spending money on the victim, buying presents and that kind of thing; and also very concerning that [Defendant] involved her own child to access the victim.

The other part of the psychosexual evaluation that is concerning is that the activities, the reports, the instructions, the text messages that the activities be kept secret, don't tell anybody about this, those are consistent with predatory behavior rather than just kind of misjudgment. Again, this wasn't a one[-]time thing, this happened over a period of time.

So in applying all of those factors to consider I find that the circumstances of the offense, the deterrent effect of the punishment and the likelihood that diversion would serve the ends of justice and the best interest of the public, I think those outweigh and I am not going to grant diversion.

It is clear that the trial court considered the sentencing law and principles. The record reflects that the trial court considered and weighed all of the required factors in arriving at its decision and recited the relevant factors to its decision. *See State v. Adinolfi*, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at \*4 (Tenn. Crim. App. June 2, 2014) (A review of the entire record establishes that the court considered and weighed the required factors, identified those most relevant to the case at hand, and placed on the record its reasons for denying diversion). The trial court explained on the record why it denied Defendant's request for judicial diversion and explained why the circumstances of the offense outweighed the other factors and concluded that judicial diversion would not serve the interests of the public or Defendant. We also find, as pointed out by the State, the record shows that Defendant had little remorse for her actions. She seemed more concerned about the effect of her actions on her family and herself rather than the victim. Defendant also blamed the victim's family for the times that her children have been bullied, and she also blamed the victim for the offenses stating that he began pursuing her, and she eventually gave in to him. Lack of remorse is a proper consideration in denying judicial diversion. *See State v. Oakes*, No. E2006-01795-CCA-R3-CD, 2007 WL 2792934, at \*9 (Tenn. Crim. App. Sept. 27, 2007)(lack of remorse where the defendant "seemed more concerned about the fate of her teaching career than about the impact of the incident on the victim and his family"). Accordingly, the trial court's decision is entitled to a presumption of reasonableness. Defendant is not entitled to relief on this issue.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114 (2010 & Supp. 2013); *see also Bise*, 380 S.W.3d at 699 n. 33, 704; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). "[A] trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Id*. at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346.

In this case, Defendant pleaded guilty to six counts of statutory rape, a Class D felony, and one count of solicitation of a minor, a Class E felony. T.C.A. § 39-13-506(d)(3), -528(c). The authorized sentence for a Range I, standard offender, convicted of a Class D felony is between two and four years. T.C.A. § 40-35-112(a)(4). The authorized sentence for a Class E felony is between one and two years. T.C.A. § 40-35-112(a)(5). Defendant was sentenced to four years for each count of aggravated statutory rape and two years for solicitation. All sentences were ordered to run concurrently for an effective four-year sentence. As for the length of the sentence, the court found:

So then that takes us to sentencing. There's already been the agreement that there would be no jail time or no split confinement. I do find that the enhancement factors of seven and 14 are applicable in this case, that the Defendant was motivated by a desire to - - the offense was committed to gratify her desire for sexual pleasure or excitement and that she, certainly, abused a position of public trust with this victim. And, again, I think just the issues of the deterrent effect and that just serving

the ends of justice, so the sentence will be on probation, supervised probation, counts one through six, the class D felony, we'll do four years but all concurrent, and then count seven, two-years on probation, also concurrent. [Defendant] will be required to have victim impact treatment and sex offender treatment.

The trial court properly applied the two enhancement factors in this case: "the offense . . . was committed to gratify the defendant's desire for pleasure or excitement," and "the defendant abused a position of public or private trust." T.C.A. § 40-35-114(7) and (14). Defendant argues that the trial court erred by applying factor (14) because it is "not supported by the evidence." However, we find that the factor was appropriately applied. Regarding a position of trust, the Tennessee Supreme Court has stated:

> The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of the existence of a position of trust *does not depend on the length or formality of the relationship, but upon the nature of the relationship.* Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith.

*State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn.1996) (emphasis added). In this case, the victim was a friend of Defendant's son, and he would spend time at Defendant's house in her care as a friend's mother. The summary of Defendant's psychosexual evaluation notes a concern that Defendant's actions were consistent with the sex offending behavior of "Grooming: spending money on potential victim, buying presents, going to movie, and setting up rules to not tell and progression of sexual contact. It is also concerning there is indication in the reports that [Defendant] involved her teenage son for access to her alleged victim." Defendant's first sexual encounter with the victim occurred while the victim was in Defendant's care while he was at her home visiting her son. In any event, even if this factor had been inappropriately applied, the misapplication of an enhancement factor neither removes the presumption of reasonableness nor does it invalidate the sentence. *Bise*, 380 S.W.3d at 706, 709. Defendant also contends that the trial court erred in not applying certain mitigating factors. As noted by the State, Defendant did not specifically argue for any mitigating factors at the sentencing hearing. The trial court in its discretion declined to apply any mitigating factors, and we do not find that any apply in this case.

Because the trial court properly considered the evidence offered by the parties, stated on the record what enhancement and mitigating factors were considered, and complied with the purposes and principles of sentencing and imposed a within range sentence, the trial court did not abuse its discretion in enhancing Defendant's sentence and sentencing her to an effective four-year sentence. Defendant is not entitled to relief.

## *CONCLUSION*

After a thorough review of the record and briefs, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE